343 So.2d 1040 (1977)
LOUISIANA POWER & LIGHT COMPANY, Plaintiff-Appellant,
v.
LOUISIANA PUBLIC SERVICE COMMISSION et al.,
Defendants-Intervenors-Appellees.
No. 58751.
Supreme Court of Louisiana.
February 28, 1977.
Rehearing Denied April 7, 1977.
*1041 Andrew P. Carter, Eugene G. Taggart, William T. Tete, Monroe & Lemann, New Orleans, for plaintiff-appellant.
Marshall B. Brinkley, Baton Rouge, for defendants-appellees.
E. Rudolph McIntyre, Winnsboro, John Schwab, Baton Rouge, for intervenor-appellee.
TATE, Justice.
By these proceedings, the plaintiff utility ("Louisiana Power") seeks judicial review of an order of the defendant commission. The order resulted from a complaint filed in the commission by another utility ("Northeast"), intervenor in these judicial proceedings. Northeast there claimed that, in violation of a commission general order, Louisiana Power was constructing duplicative facilities to serve a customer within a geographic area now served by Northeast.
Louisiana Power appealed to the district court for judicial review of the commission adjudication of this dispute in favor of *1042 Northeast, which ordered that Northeast's lines provide service in the area. The district court upheld the order, following which Louisiana Power now appeals directly to this court. See La.Constitution of 1974, Article 4, Section 21(E).
Upon its appeal, Louisiana Power attacks: (1) the commission's conclusion that Louisiana Power's facility was duplicative of the service furnished by Northeast to the area; (2) the commission's failure to conclude that service to be furnished by Louisiana Power would be more economical and reliable than that to be available from Northeast; (3) and, in the alternative, the validity of agency's general order which the commission held was violated by Louisiana Power's duplicative facility.

I.
Before discussing the factual context of this litigation, we deem it appropriate to discuss Louisiana Power's contention claiming invalidity of the commission's general order held to be violated by it.
The general order is entitled "In re: Duplication of Electric Service." The full text of the order is set forth at Appendix 1 below.
The stated purpose of the general order is to prohibit uneconomic and wasteful practices in the service of electricity, in order to maintain reasonable rates. The commission determined that "wasteful competitive and unwise expenditures and investments which become a burden upon the rate payers" result from "the paralleling and duplication of existing transmission or distribution lines. . . or the extensions of either by electric public utilities to serve customers readily accessible to like facilities of an electric public utility already providing service in the immediate area."
The commission therefore ordered "That no extension of electric transmission or distribution lines shall be made by an electric public utility that will duplicate the transmission and distribution lines . . . of another like utility, nor shall extensions be made to serve customers that could be served from such electric public facilities already in existence in an economic and justifiable manner."
At the time the general order was issued, Louisiana Power did not attack its validity, although under the rules of the commission a procedure was available for it to do so for a period before and following issuance of the order. Further, as the commission points out, Louisiana Power thereafter has sought relief before the commission and the courts on the basis of the validity of this order. See, e. g., Louisiana Power & Light Co. v. La. Pub. Serv. Com'n., 324 So.2d 427, 429 (La.1975).
The commission's brief suggests that the validity of the general order upon which the administrative adjudication is based is not properly before us for judicial review: It was not attacked in the administrative proceedings prior to the suit in district court for judicial review of the agency adjudication. Nevertheless, we pretermit decision of this preclusion issue, because the issue is not squarely raised by the pleadings in the district court, and since the record before us does not indicate clearly that the plaintiff could have raised the invalidity of the rule-making (general) order in the adjudicatory proceedings for which judicial review is now sought.[1]
*1043 The general order was issued upon the constitutional authority of the commission to regulate public utilities and to adopt reasonable rules and regulations necessary for the discharge of this duty. La.Constitution of 1974, Article 4, Section 21(B).[2]
Louisiana Power attacks the validity of the order upon three principal grounds:
(1) It first attacks the validity of the general order as attempting to grant a franchise to utilities in violation of Article 12, Section 14, La.Constitution of 1974 (which prohibits exclusive and perpetual franchises), and in the absence of statutory authority for the commission to grant any franchise.
The general order, on its face, does not purport to do so (see Appendix 1 below). Within the regulatory scope of the commission's authority, the order merely regulates the construction of duplicating electric facilities, having regard to the effect of wasteful utility competition and expenditure upon the rates which must be charged to pay for them. See Louisiana Gas Service v. Polaris Corporation, 254 La. 297, 223 So.2d 810 (1969).
(2) The plaintiff utility next suggests that the exercise of the commission's rule-making power in this regard violates its right to own and use private property, Article 1, Section 4, La.Constitution of 1974.
However, this constitutional provision also notes: "This right [of private ownership of property] is subject to reasonable statutory restriction and the reasonable exercise of the police power." There is no showing whatsoever that the commission's general order inhibiting duplicative electricservice facilities (the cost of which will ultimately be borne by rate payers) is an unreasonable exercise of its constitutional and legislative regulatory powers over public utilities and their rates.
(3) Finally, Louisiana Power argues that the commission's general order constitutes an invasion of the power of the legislature. The basis for this argument is that the commission's order prohibits duplicative utility construction to an area immediately served by the facilities of another utility; whereas by La.R.S. 45:123 (1970) the legislature prohibited construction of duplicative facilities only to points located within 300 feet of another utility's electric line.
As we previously noted, the broad regulatory power of the commission includes within its scope the issuance of a general order inhibiting duplicative utility facilities, such as the present. The cited legislative enactment, though more limited in application, is not in conflict with the general order of the commission, which is likewise directed against duplicating utility facilities.
We are not impressed by this contention of the plaintiff. We are cited to no authority that, because the legislature addresses itself to a part of a problem within the constitutional authority of the commission to regulate, the commission is deprived of its constitutional power to issue regulations concerning broader aspects of the issue with which the legislature concerned itself only in part.[3]
We conclude, therefore, that the plaintiff utility's attack on the validity of the general order is without merit.

*1044 II.
The remainder of Louisiana Power's contentions attack the commission's factual and legal conclusions that its general order was violated, as well as some of the findings of fact by the commission.
Preliminarily, we note the principles applicable to judicial review of a commission order:
The orders of the commission are entitled to great weight and are not to be overturned on judicial review, unless shown to be arbitrary, capricious, or abusive of the commission's authority. Louisiana. Oilfield Carriers Ass'n, Inc. v. Louisiana Public Service Commission, 281 So.2d 698 (La.1973) and many decisions therein cited. As there noted, a person attacking a commission order bears the burden of demonstrating that it is defective, since the order is presumed to be valid. See also Monochem, Inc. v. Louisiana Public Service Commission, 253 La. 1047, 221 So.2d 504 (1969).
Further, while a ruling of the commission may be deemed arbitrary unless supported by some factual evidence, the function of the court on judicial review is not to re-weigh and re-evaluate the evidence and to substitute its judgment for that of the administrative agency constitutionally entrusted with regulation of the matter. Truck Service, Inc. v. Louisiana Public Service Com'n., 263 La. 588, 268 So.2d 666 (1972). As reiterated in Rubion Transfer and Storage Co. v. Louisiana Public Service Commission, 240 La. 440, 123 So.2d 880, 884 (1960): "* * * Whenever the Public Service Commission, in the issuing of an order, has acted within its power, and not arbitrarily or grossly contrary to the evidence, and when no error of law has been committed, the court must not substitute its judgment for that of the commission, or consider the expediency or wisdom of the order, or say whether on like evidence the court would have made a similar ruling."
The most arguable contention advanced by Louisiana Power is that its proposed six-mile line was not a duplication of any existing electric transmission or distribution lines of Northeast, as prohibited by the general order.
The contention is based upon the following facts:
The dispute arises out of the desire of Louisiana Power to provide electric service to a pipeline company's new pumping station built near Oak Grove. The pumping station is 334.48 feet from an existing line of Northeast, and in an area immediately served by other electric lines of Northeast.
The evidence further shows that a three-phase, 34,500-volt electric line is necessary to provide reliable service to the two 1,500-horsepower motors of the new pumping station. To provide this service, Louisiana Power is required to construct a six-mile extension of its own facilities, crossing and closely paralleling at many places existing electric lines of Northeast.
Northeast's present lines in the area are single-phase, 13,800-volt electric line. However, as the documented testimony of its consulting engineer at the commission hearing shows, Northeast has since 1972 planned to upgrade into a 34,500-volt line 9.31 miles of its 13,800-volt line now going into the area. Even before the construction of the new pumping station, Northeast intended to upgrade the voltage so as to provide more reliable service to its present 120 customers along the existing line (as well as to have the capacity to provide additional service to new customers, as the need arose along the line in question).
Louisiana Power first argues that its new three-phase 34,500-volt electric line could not be considered a duplication of the existing single-phase 13,800-volt electric line of Northeast. The district court properly rejected this contention for the following reasons:
"LP&L argues that, simply because Northeast's existing facilities must be upgraded in order to serve Mid-Valley [`s pumping plant], LP&L's construction of entirely new facilities for 6 miles to serve Mid-Valley does not constitute a duplication of the existing facilities. But `duplicate' *1045 means, again according to Webster's, `to double.' Here, where there has been one right-of-way route, there are two; where there has been a line of poles and electrical lines, there are two; where there has been one utility company, there are two. It is this mischief which the Commission addressed in its General Order, and which it properly found to have been worked in this case. LP&L's doubling constitutes duplication in any normal sense of the word or concept. The Commission was correct in so finding. Reduced to its logical consequence, LP&L's argument would be that any new customer could be served by any utility, because some addition of a transformer, pole, and line is necessary to serve a new customer, so that no utility ever would have the `existing facilities' which LP&L argues the General Order contemplates and requires. Obviously, the Commission disagreed with the LP&L argument, and so does this Court."
Louisiana Power's remaining contentions principally involve an attempt to have the courts re-evaluate the evidence so as to reach different conclusions than did the commission. (The findings and conclusions of the commission supporting its order are set forth at Appendix 2 below.)
We find no merit to these contentions. We find evidence in the record to support each of the findings and conclusions of the commission (see Appendix 2)indeed preponderating evidence.
For instance, Louisiana Power argues that the evidence shows that the costs of its facilities to serve the power plant is $111,900, whereas Northeast's costs of upgrading its longer lines would be $176,000. As the commission properly found, however, this argument overlooks that the Northeast line now serves 120 additional consumers, which line Northeast had previously planned to upgrade to 34,500 volts. Therefore, the entire cost of the upgraded facility should not be chargeable only against the cost of servicing the new pumping plant.[4] (Northeast's consulting electrical engineer testified that the additional costs involved in adding service to the pumping plant were only $10,000 over the amount previously planned for upgrading of the service to the 120 other consumers on the line.)
We likewise find no basis for Louisiana Power's further contention that the commission erred in finding that Northeast's present facilities, as upgraded, will be adequate for the pipeline pumping station. Louisiana Power's witnesses did testify that Louisiana Power's service would be more reliable; but nevertheless the commission had before it ample testimony that Northeast's upgraded line would provide completely reliable service to the new pumping plant and to all its present customers along Northeast's line.
Without citation of applicable authority, Louisiana Power finally argues that the commission erred in not affording a preference to a customer's choice of the utility to be served and in not considering that, at least under its present rate structure, Louisiana Power might be able to serve this individual customer at a lower rate than could Northeast.
We do not regard the commission's ruling as arbitrary that, in the determination of whether its general order inhibiting duplicative electric service lines is violated, it is irrelevant that one utility may be able to provide service at lower rates (at least temporarily for this single customer) through its duplicative line. In the present case, for instance, Northeast's present 120 customers will through their rates pay for the long-intended upgrading to 34,500-volt capacity of *1046 Northeast's existing line, whether or not servicing the pumping station shares in paying the cost of the upgrading. At the same time, if Louisiana Power is allowed to provide service to this pumping plant, it will build a six-mile line to service this single customer. As the commission observed, the construction of these duplicative lines under such circumstances will "ultimately lead to wasteful competition, unwise expenditures, and excessive aggregate rate bases." (Italics ours.)
Conclusion
The defendant commission's order now judicially reviewed is not shown to be arbitrary, as contrary to law or to evidence heard by the regulatory body. Therefore, under accepted principles of judicial review, this court may not substitute its judgment for the commission's and overturn such non-arbitrary ruling, which moreover we find to be supported by the preponderant evidence.
Accordingly, we affirm the judgment of the district court, which dismissed the plaintiff's suit to review the commission's order, at the cost of the plaintiff-appellant.
AFFIRMED.

APPENDIX 1
The text of the Louisiana Public Service Commission General Order dated March 12, 1974, regulating "Duplication of Electric Service" is as follows:
At the session of the Louisiana Public Service Commission held at its office in Baton Rouge, Louisiana, on March 12, 1974, the matter of the most economical and least wasteful utilization and development of electric public utility facilities was considered.
It is the opinion of this Commission that in order to effect economies in the service of electricity, and, thus, keep rates therefor within reasonable bounds, uneconomic and wasteful practices should be prohibited. It is determined that the paralleling and duplication of existing transmission or distribution lines as defined in Louisiana Revised Statutes 45:123 or the extensions of either by electric public utilities to serve customers readily accessible to like facilities of an electric public utility already providing service in the immediate area is not in the public interest, and that such practices ultimately lead to wasteful competition and unwise expenditures and investments which become a burden upon the rate payers.
It is recognized that while in some areas there is not clear line of demarcation between the service area of electric public utilities, for the purpose of this order, the service area of electric public utility is that area which, as a result of the existence of transmission and distribution lines, is readily accessible by economically feasible extensions from such existing facilities. This necessarily includes customers already receiving service. It is, accordingly, ordered.
That no extension of electric transmission or distribution lines shall be made by an electric public utility that will duplicate the transmission and distribution lines (as defined in Louisiana Revised Statutes 45:123) of another like utility, nor shall extensions be made to serve customers that could be served from such electric public utility facilities already in existence in an economic and justifiable manner. If a public utility, for good cause, refuses to serve a prospective customer within its service area, another like utility may serve the said customer upon written authority of this Commission.
If economies or reliability can be effected in the construction of transmission or distribution lines by a utility company through a service area already being served by another public utility, such construction shall not be regarded as an "invasion" so long as no such transmission or distribution lines are tapped for service in the said service area. In the event that a tap from such transmission and distribution line is necessary or desirable, it shall be made only upon separate and specific written authority of this Commission after hearing.
The term public utility shall include electric cooperatives and public utility activity or service under the jurisdiction of the Commission.

*1047 APPENDIX 1
Notwithstanding any other provision hereof, nothing contained herein shall preclude any electric public utility from extending service to its own property, or to another electric public utility for resale.

APPENDIX 2
Findings and conclusions of Louisiana Public Service Commission in Northeast Louisiana Power Company, Inc. v. Louisiana Power & Light Company, Docket No. U-12799:
In this proceeding Northeast Louisiana Power Cooperative, Inc. alleges that Louisiana Power and Light Company violated the provisions of this Commission's General Order entitled "Duplication of Electric Service" and LRS 45:123 by contracting to serve Mid-Valley Pipeline Company at its proposed pumping station in West Carroll Parish, Louisiana.
The matter was heard by the Commission in Regular Session held July 15, 1975.
Witnesses for Northeast Louisiana Power Cooperative, Inc. testified that the Company has long range plans to convert existing facilities within the area in question to 34.-5KV, approved by REA in December of 1972, and that the new facilities will adequately serve the facilities of Mid-Valley Pipeline Company and improve service to the existing customers. They further testified that the service to the Pipeline Company will merely advance the completion date of its long range plans. They further testified that the route proposed by Louisiana Power and Light Company will duplicate the lines of Northeast Louisiana Power Cooperative, Inc. for approximately four miles and cross the territory presently being served by Northeast, as well as two lines of Northeast.
Witnesses for Louisiana Power and Light Company testified that the proposed construction by their Company is more economical and more reliable than Northeast service.
It is the opinion of the Commission that the provisions of LRS 45:123 have not been violated since no point of connection has been or will be served by one electric utility within 300 feet of an existing line of another electric utility. However, the Commission does find that the provisions of this Commission's General Order entitled "Duplication of Electric Service," dated March 12, 1974, prohibit the extension of facilities by one electric utility to serve customers readily accessible by facilities of an electric public utility already providing service in the immediate area. Such practices ultimately lead to wasteful competition, unwise expenditures, and excessive aggregate rate bases. It is evident in this case that both utilities will utilize the same substation and therefore overall investment in facilities should cost approximately the same. The Cooperative has served the immediate area and will have facilities adequate for the Pipeline Company regardless of the outcome of this matter; the same cannot be said of Louisiana Power and Light Company. Moreover, the upgraded Northeast facilities will serve more than this customer, reducing the cost per customer. * * *
NOTES
[1] The commission's rules are not before us. We note, however, that for agencies subject to Louisiana's administrative procedure act, a party to an adjudicatory proceeding, if he contests the validity or applicability of an administrative rule, is ordinarily required to raise the issue in the administrative proceeding before he may obtain judicial review of the rule's validity upon his appeal from a final agency decision. La.R.S. 49:963 (1966). See also 3 Davis, Administrative Law Treatise, Section 20.06 (1958; see also 1970 and 1976 supplements).

On the other hand, where as here the issues relate more to the lawfulness of the rule-making order rather than to the factual basis or the administrative policies which support its validityinstances in which administrative expertise should be permitted to explain the technical bases for the rule in an administrative record, many state courts do not mandatorily require prior resort to an administrative remedy before they will afford judicial review of the invalidity of a general order, at least in the absence of legislative mandate or valid regulation requiring such prior resort. See 2 Cooper, State Administrative Law 568-82, 600-602 (1965).
[2] See also La.R.S. 45:1163-64 which provide:

"[1163] The commission shall exercise all necessary power and authority over any . . . public utility for the purpose of . . . regulating the . . . service furnished . . ." and "[1164] The power, authority, and duties of the commission shall affect and include all matters and things connected with, concerning, and growing out of the service to be given or rendered by such public utilities. . ."
[3] Louisiana Power cites Central Louisiana Electric Co. v. Louisiana Public Service Com'n., 253 La. 553, 218 So.2d 592 (1969). The decision is inapposite to any issue now before us. There, we held only that electric cooperatives were not "utilities" for purposes of the mandatory constitutional jurisdiction of the Louisiana Public Service Commission (although indicating that, by legislation, they might be made subject to such regulatory powers of the commission).
[4] For instance, with regard to Louisiana Power's contention that $176,000 must be spent by Northeast to convert its line to 34,500 volts, whereas only $111,900 must be spent by Louisiana Power: Northeast's figure includes the sum of $66,000 for individual distribution transformers to Northeast's present 120 customers, a charge not necessitated by Louisiana Power's duplicating line (since it had no other customers than the pumping plant to be served by its new six-mile line). Arguably, even overlooking the pro-rating of the cost among all consumers served by the line, the costs of both utilities to service the new pumping plant were approximately equal.