SUMMERS, Justice.
In a letter dated March 21, 1975 Claiborne Electric Cooperative, Inc., complained to the Louisiana Public Service Commission alleging that Louisiana Power and Light Company had made or was in the process of making electrical line extensions north of the city of Minden which were clear violations of the Commission’s General Order of March 12, 1974 relating to the duplication of electrical facilities. Claiborne also charged that Louisiana Power had extended its lines to provide service to a customer within 300 feet of Claiborne’s existing lines contrary to proscriptions contained in Section 123 of Title 45 of the Revised Statutes. Furthermore, according to the complaint, Louisiana Power had extended its lines and proposed to extend others into areas in which Claiborne’s existing lines could provide service economically and efficiently. The line extensions and those proposed into the area by Louisiana Power were said to be needless duplications of electrical facilities. Louisiana Power should not, therefore, be permitted to provide service to this area, and Claiborne requested that Louisiana Power’s lines be removed. Upon being apprised of this complaint Louisiana Power discontinued service to the customer within 300 feet of Claiborne’s existing lines.
Nevertheless, on June 2, 1975 Claiborne filed a petition before the Commission alleging that Louisiana Power had constructed lines in the Garrison Addition of Minden, Louisiana, and had cleared rights of way for future lines in that addition. Plats made part of the petition delineated the location of the recently constructed and proposed lines of Louisiana Power and the existing lines of Claiborne.
Historically, according to the petition, the area involved was served by Claiborne and their lines had existed for a number of years prior to Louisiana Power’s extensions. Claiborne alleged that it could economically serve the additional load resulting from development of the Garrison Addition without delay.
By its extensions and proposed extensions into the Garrison Addition Louisiana Power was alleged to be duplicating service in the area in violation of the Commission’s General Order of March 12, 1974 and the spirit and letter of Section 123 of Title 45 of the Revised Statutes relative to extending service to a point of connection which is within 300 feet of an electric line of another electric public utility.
Claiborne prayed that Louisiana Power be permanently restricted and enjoined from duplicating the electric lines and facilities of Claiborne in the Garrison Addition.
Louisiana Power answered, denying generally Claiborne’s allegations and alleged that it has for many years served customers in the area and has owned electric facilities in the area since 1948. Louisiana Power further answered that it had complied with the provisions of Section 123 of Title 45 of the Revised Statutes and that the customers who had applied to it for service in the *720 area could be served from its existing facilities or extensions thereof in an economical and justifiable manner.
After a hearing the Commission rendered its order finding
“that the purpose of its General Order dated March 12, 1974, entitled ‘Duplication of Electric Service’ was to effect economies in the service of electricity and thus keep rates within reasonable bounds. Uneconomic and wasteful practices are prohibited. The extension of facilities by one electric utility to serve customers readily accessible by facilities of an electric public utility already providing service in the immediate area is not in the public interest and such practices ultimately lead to wasteful competition and unwise expenditures. The facilities constructed by Louisiana Power and Light Company clearly indicate a wasteful practice since the existing facilities of Claiborne can serve the prospective customers at lesser cost and by simple extensions of the existing facilities.”
On these findings Louisiana Power was ordered to dismantle the facilities constructed to serve Garrison Addition and that electric service to this subdivision be provided by Claiborne.
After its application for rehearing was denied, Louisiana Power petitioned the Nineteenth Judicial District Court under appropriate authority for an appeal from, and judicial review of, the Commission’s order, praying that its execution be enjoined pending final determination of the appeal. La.Const, art. IV, § 21(E); La.Rev. Stat. 45:1191-95.
The Commission answered, Claiborne intervened and the parties stipulated that the efficacy of the Commission’s order would be stayed until final judgment on the appeal. A pretrial conference resulted in a stipulation that the pleadings established that Louisiana Power had not served any customers in the Garrison Addition whose point of connection was within 300 feet of any line of the electric co-op.
On these stipulations and the record made before the Commission the district court rendered judgment in favor of the Commission, affirming its order, and dismissing Louisiana Power’s demands at its cost.
In its appeal to this Court Louisiana Power contends that the Commission’s decision is unsupported by its General Order of March 12,1974, “In re: Duplication of Electric Services”, and the Commission’s decision cannot be supported by and is contrary to Section 123 of Title 45 of the Revised Statutes and this Court’s holding in South La. Electric Coop. Ass’n v. La. Public Service Com’n, 309 So.2d 287 (La.1975).
I.
The Commission’s General Order of March 12, 1974, which Louisiana Power asserts does not support the decision in this case, purports to require the most economical and least wasteful utilization and development of electric public utility facilities. The order was promulgated to effect economies in the service of electricity, maintain rates within reasonable bounds, and prohibit uneconomic and wasteful practices. Paralleling and duplication of existing transmission or distribution lines or the extension of either by electric public utilities to serve customers readily accessible to like facilities of an electric public utility already providing service in the immediate area is not in the public interest according to the order. Such practices ultimately lead to wasteful competition and unwise expenditures and investments burdening the rate payer.
The order recognizes that in some areas there is no clear line of demarcation between the service area of public utilities, and finds that the service area of an electric public utility is that area which, as a result of the existence of transmission and distribution lines, is readily accessible by economically feasible extensions from such existing facilities, including customers already receiving service.
Insofar as pertinent to the case at bar, and based on the foregoing findings, the order mandates
*721 “[t]hat no extension of electric transmission or distribution lines shall be made by an electric public utility that will duplicate the transmission and distribution lines (as defined in Louisiana Revised Statutes 45:123) of another like utility, nor shall extensions be made to serve customers that could be served from such electric public utility facilities already in existence in an economic and justifiable manner.”
The record before the Commission reflects that in this territorial dispute Claiborne seeks to abate Louisiana Power’s intrusion into the Garrison Addition east of the Germantown Road, an area involving 120 acres, measuring approximately three-fourths of a mile east and west and one-fourth of a mile north and south. Testimony and data contained on plats reflect that since 1958 Claiborne has maintained a distribution line along the east half of the south line of the subdivision, and a connecting line along a parish road bisecting the subdivision in a north-south direction. From these lines Claiborne served those customers in the subdivision requesting service.
In 1974 and 1975 Louisiana Power constructed extensions into the subdivision. These began at its transmission and distribution line which ran nearby through the city of Minden. The beginning point was about 1,900 feet northwest of the northwest corner of the Garrison Addition. This extension ran easterly along the north line of the subdivision to a point approximating half of its length and thence southward into the subdivision approximately 300 yards. Additional extensions to this line are proposed by Louisiana Power which would involve another branch running southward into the subdivision permitting Louisiana to serve another segment of the subdivision.
From a distribution line it had constructed in 1966 along the east line of the subdivision, Louisiana Power constructed an extension in 1975. This line ran along the north line of the subdivision from its northeast corner in a westerly direction approximately 260 yards. In addition, Louisiana Power intends to extend this line roughly the same distance to the south forming, with other shorter extensions, a “C” shaped pattern of electric distribution lines. These north-south lines run along the back of the subdivision lots and parallel Claiborne’s north-south line which runs along the road which the lots face.
While none of Louisiana Power’s lines presently serve customers within 300 feet of Claiborne’s previously existing lines, they do plan to serve, contrary to the General Order, “customers that could be served from . . . [Claiborne’s] electric public utility facilities already in existence in an economic and justifiable manner.”
While no clear line of demarcation between the service areas of these two utilities had been established, the subdivision is an area which, “as a result of the existence of [Claiborne’s] transmission and distribution lines, is readily accessible by economically feasible extensions from such existing facilities.” Moreover, this Court finds that the effect of Louisiana Power’s 1974 and 1975 extensions, and its proposed extensions, is to parallel and duplicate Claiborne’s pre-existing lines. Louisiana Power’s extensions will, therefore, lead to wasteful competition and unwise expenditures and investments which become a burden upon the rate payer, a practice reprobated by the General Order and by acceptable principles supporting regulation of utilities.
On the basis of these findings it is concluded that the Commission’s order, requiring Louisiana Power to dismantle the facilities constructed to serve Garrison Addition and that electric service to this subdivision be provided by Claiborne, is reasonably supported by the General Order.
II.
The contention that the Commission’s order in the case at bar is contrary to Section 123 of Title 45 of the Revised Statutes and this Court’s holding in South La. Electric Coop. Ass’n v. La. Public Serv. Com’n, 309 So.2d 287 (La.1975) is also without merit.
In the factual context of the instant case the pertinent part of Section 123 provides:
*722 “No electric public utility shall construct or extend its facilities, or furnish, or offer to furnish electric service to any point of connection which at the time of the proposed construction, extension, or service is being served by, or which is not being served but is located within 300 feet of an electric line of another electric public utility, except with the consent in writing of such other electric public utility .
In South La. Electric Coop. Ass’n v. La. Public Serv. Com’n, supra, this Court interpreted Section 123 and held that although a portion of one lot in a subdivision being served by an electric utility was located within 300 feet of an existing line of another utility, Section 123’s prohibition against furnishing of electric service to “any point of connection” which is located within 300 feet of an electric line of another utility was not violated, where there was no meter connection on the lot in question and all connections to other lots within the subdivision were located beyond 300 feet of the existing line.
The facts giving rise to the suit in South Louisiana Electric Coop. Ass’n v. La. Public Service Com’n occurred in 1973 before the promulgation of the Commission’s General Order of March 12, 1974. The General Order, therefore, was inapplicable to that decision and the court was solely concerned with the narrow question presented — the interpretation to be given “point of connection" as used in Section 123.
Here, however, the posture of the case is different. The facts giving rise to this litigation occurred after the effective date of the General Order. Under these circumstances both Section 123 and the General Order are applicable, Section 123 for its specific prohibition, and the General Order for its broad proscription against duplication of electric service within the immediate area of facilities readily accessible to those to be served.
In La. Power & Light Co. v. La. Public Service Commission, 343 So.2d 1040 (1977), this Court considered the March 12, 1974 General Order. We held then that the broad regulatory power of the Commission includes within its scope the issuance of a general order inhibiting the duplication of utility facilities. Section 123,. though more limited in application, was not considered to be in conflict with the general order also aimed against duplication. La.Const. art. IV, § 21(B) (1974); La.Rev.Stat. 45:1163-64.
Because the legislature addresses itself to a part of the problem within the constitutional authority of the Commission to regulate was no reason, the Court, held, to deprive the Commission of its constitutional power to issue regulations concerning broader aspects of a problem with which the legislature concerned itself only in part. No authority was cited to support a contrary result.
It may be seen from this analysis of the relevant authority that the Commission’s decision is not contrary to Section 123 or this Court’s decision in South La. Electric Coop. Ass’n v. La. Public Service Com’n. Since there is a finding in this record that Louisiana Power is not violating Section 123, the Commission decision is based upon the broader March 12, 1974 General Order proscribing duplication of facilities within the immediate area of existing facilities.
For the reasons assigned, the judgment of the district court is affirmed.