SUMMERS, Chief Justice.
On June 15, 1977, Louisiana Power and Light Company (“L.P. & L.”) filed a complaint with the Louisiana Public Service Commission (“Commission”), alleging that *406 Beauregard Electric Cooperative, Inc. (“Beauregard”) was making attempts to serve a proposed elementary school to be located on the Fort Polk military installation in violation of the Commission’s General Order of March 12, 1974, relating to duplication of electric service. In its complaint L.P. & L. alleged that it had furnished electric service to Fort Polk for many years and that it currently furnished such service to the installation. L.P. & L. alleged in its complaint that it had an existing 34.5 KY three-phase electric line located approximately 1,900 feet from the school site, and that Beauregard’s closest line was located a greater distance from the school. L.P. & L. further asserted that by its attempted service to the proposed Polk Elementary School, Beauregard was allegedly in violation of the Commission’s General Order of March 12, 1974, by duplicating electric service in the area. The complaint concluded by seeking a cease and desist order against Beauregard, enjoining it from further attempts to furnish electrical service at the school.
By án amended complaint dated June 29, 1977, L.P. & L. alleged that Beauregard had constructed an electric line extending from the Beauregard line nearest to the school location to the school site, a distance of approximately 3,500 feet. This extension was alleged by L.P. & L. to have been constructed between June 23, 1977, and June 28, 1977, and L.P. & L. claimed that this action by Beauregard was taken after service of the Commission’s summons upon Beauregard. L.P. & L. claimed that the extension crossed directly under existing L.P. & L. power lines. The amended complaint sought an order that Beauregard dismantle the extension it had constructed and refrain from further action.
In response to the complaint, Beauregard filed an exception to the jurisdiction of the Commission and an exception of no cause of action, as well as its answer including a reservation of rights. In the exceptions filed, Beauregard claimed that since the school facility was owned by the United States Government and was to be located on property owned by the United States Government, the Commission had no jurisdiction to adjudicate the respective rights of the electric utility companies to serve the Fort Polk military installation. Beauregard claimed in addition that neither La.Rev. Stat. 45:123, relative to extending service to a point of connection which is within 300 feet of an electric line of another public electric utility, nor the Commission’s General Order of March 12,1974, had any application to the furnishing of electrical service on United States Government property, and therefore, L.P. & L. stated no cause of action.
After a hearing the Commission rendered its order finding that
“. . . after consideration of the evidence and exhibits in this case — including the exception to the jurisdiction and exception of no cause of action filed by Beauregard and the response thereto by legal counsel for L.P. & L. — L.P. & L. can serve the Vernon Parish School Board Elementary School to be constructed on Fort Polk property more economically than Beauregard can and further finds that Beauregard is in violation of this Commission’s General Order dated March 12, 1974 entitled ‘Duplication of Electric Service’ . . . ”
On these findings the Commission ordered that L.P. & L. was authorized to provide electric service to the Vernon Parish School Board Elementary School on the Fort Polk property and that Beauregard was to remove the extension it had constructed to serve the school.
When the application for rehearing was denied, Beauregard petitioned the Nineteenth Judicial District Court under appropriate authority for an appeal from and judicial review of the Commission’s order. L.P. & L. intervened and upon responsive pleadings filed, L.P. & L. filed with the Commission and in the district court rules to show cause why Beauregard should not be ordered to remove the extension it had constructed. The district court referred the exceptions to the merits and the rules to show cause were dismissed pending the out *407 come of the appeal. By amended petition Beauregard prayed for an interlocutory injunction with reference to removal of the extensions.
A stipulation between the parties set forth that the Vernon Parish School Board elementary school site was physically located on property owned by the United States Government, with Vernon Parish School Board as owner and operator of the buildings. On these stipulations and the record made before the Commission, the district court rendered judgment approving the order of the Commission. From this judgment, Beauregard appeals.
The record before the Commission reflects that in this “customer dispute,” L.P. & L. seeks to prevent Beauregard from providing service to Polk Elementary School, a proposed school which was to be constructed, owned and operated by the Vernon Parish School Board on the Fort Polk military reservation. Testimony given before the Commission indicates that the Vernon Parish School Board and the United States Government, through the Department of the Army, had agreed by lease that the Vernon Parish School Board had permission to place its school upon the military installation.
Pursuant to its resolution passed June 2, 1974, the Vernon Parish School Board had accepted Beauregard’s proposal to supply electrical service to the new school. Construction was scheduled to begin by September 1977. The Vernon Parish School Board subsequently filed an application for membership in the cooperative and for electric service with Beauregard, constituting an agreement for service between the parties.
By letter dated June 21, 1977, Beauregard was granted an immediate “right of entry” or right of way upon the Fort Polk reservation to install the extension line under the authority of the Secretary of the Army. The formal right of way easement agreement was subsequently executed between Beauregard and the United States Government, granting to Beauregard a fifteen-foot wide easement from the military installation boundary proceeding 1,626 feet to the school site and 813 feet to the point of service, according to the copy of the right of way easement included in the record before the Commission.
The record reflects that the point of service in question within the Fort Polk reservation is approximately 1,400 feet from the north-south boundary on the west side of the reservation. L.P. & L. serves a telephone company located at the edge of this boundary which is L.P. & L.’s nearest customer to the school site. Prior to the construction of the Beauregard extension of which L.P. & L. complained, Beauregard’s existing 13 KV line, constructed in 1955 according to the date on the poles, reached a point 1,800 feet west of the Fort Polk boundary, where the line then proceeded north. Beauregard constructed its extension, a three-phase line, from the point where this 13 KV line began its northerly path, toward the school site, an approximate distance of 3,200 feet. L.P. & L. claims that the Beauregard extension measures a total length of 3,306 feet, in comparison to a length of 1,410 feet estimated as the length of an extension it would be able to construct from its existing 34.5 KV line. This latter line runs parallel to the Beauregard extension until it reaches the western boundary of the Fort Polk reservation, from which point it runs southward.
Beauregard provides service to several other schools operated by the Vernon Parish School Board. Electric service on the Fort Polk military installation has been provided by L.P. & L. since 1941, with the exception of Northwestern State University,- located in the northwest corner of the reservation, which is served by Central Louisiana Electric Company (“CLECO”). CLECO and L.P. & L. have a reciprocal arrangement to provide assistance in the event of outages and other service problems in the area-
In its appeal Beauregard contends that the Commission had no jurisdiction over the property owned by the United States Government to adjudicate the respective rights of the public utilities to serve this property. It argues therefore that the find *408 ing of the Commission that Beauregard’s service to the proposed school site was a violation of the Commission’s General Order of March 12, 1974 is contrary to the facts and the law and is arbitrary, capricious and unreasonable under this Court’s holding in Louisiana Power and Light Company v. Louisiana Public Service Commission, et al., 353 So.2d 718 (La.1977).
In support of its first contention Beauregard argues that the property on which its customer, Fort Polk Elementary School, is located is owned by the United States Government. The property is therefore part of a United States military installation. For these reasons the exercise of the Commission’s jurisdiction is precluded by the exclusive federal jurisdiction granted by Article I, Section 8, clause 17 of the United States Constitution, which provides:
“[The Congress shall have the power to exercise exclusive legis(lative)] . Authority over all Places purchased by the Consent of the Legislature of the State in which the Same shall be, for the Erection of Forts, Magazines, Arsenals, Dock-Yards, and other needful Buildings

This premise that the jurisdiction of the United States Government is exclusive over property owned by it within a state is said to find support in Section 1 of Title 52 of our Revised Statutes, which provides:
“The United States, in accordance with the seventeenth clause, eighth section of the first article of the Constitution of the United States, may acquire and occupy any land in Louisiana required for the purposes of the federal government. The United States shall have exclusive jurisdiction over the property during the time that the United States is the owner or lessee of the property. The property shall be exempt from all taxation, assessments or charges levied under authority of the state.
“The state may serve all civil and criminal process, issuing under authority of Louisiana on the property acquired by the United States.”
The Supremacy Clause of our federal Constitution provides that the United States Constitution and the laws enacted pursuant to its authority are the supreme law of our country, controlling over the laws of the respective states. U.S.Const. art. VI, cl. 2. See McCulloch v. Maryland, 4 Wheat. 316, 426, 4 L.Ed. 579 (U.S.1819). From this key principle in our system of federalism is derived the idea of an implied constitutional immunity of the federal government from state taxation and from state regulation. See Hannock v. Train, 426 U.S. 167, 96 S.Ct. 2006, 48 L.Ed.2d 555 (1956); Mayo v. United States, 319 U.S. 441, 445, 63 S.Ct. 1137, 87 L.Ed. 1504 (1943). This federal governmental immunity from state regulation extends to the performance by federal instrumentalities, federal officers, and agents of governmental activities or functions. Penn Dairies, Inc. v. Milk Control Commission of Pennsylvania, 318 U.S. 261, 269, 63 S.Ct. 617, 620, 87 L.Ed. 748 (1943).
In Penn Dairies, the United States considered whether the minimum price regulations of the Pennsylvania Milk Control Law could be applied constitutionally to the sale of milk by a dealer to a United States military encampment. In upholding the application of the price regulations, the Court found no “impairment of federal authority.” Id., 318 U.S. at 270, 63 S.Ct. at 621, 87 L.Ed. 748 (1943). The Court further recognized that
“. . . [sjince the Constitution has left Congress free to set aside local taxation and regulation of government contractors which burden the national government, we see no basis for implying from the Constitution alone a restriction upon such regulations which Congress has not seen fit to impose, unless the regulations are shown to be inconsistent with Congressional policy.” Id.
It follows from the rationale of the Court as expressed in Penn Dairies that in the instance where Congress has not acted to exercise its exclusive jurisdiction in providing certain services, state regulation of an independent contractor who provides such services does not infringe upon federal *409 governmental immunity from such regulation. Following the Penn Dairies rule and its reasoning once again and under the Court’s holding in James Stewart & Co. v. Sadrakula, 309 U.S. 94, 60 S.Ct. 431, 84 L.Ed. 596 (1940), state regulation of such an independent contractor is not precluded by the immunity of the federal government, because such a contractor is not a federal instrumentality and thus does not share in the governmental immunity. An exception to this rule would lie where the regulation is in direct interference with the governmental function or some congressional policy-
For instance, in Hancock v. Train, supra, an attempted regulation by the Kentucky Air Pollution Control Commission, which would have required federally owned and operated facilities to secure operating permits as air contaminant sources, was found to be an unconstitutional prohibition placed upon the United States Government. The permit requirement, which prohibited operation of installations without a permit, was found inapplicable by the Court because enforcement of such a regulation would have prohibited operation of the federal installations upon which the air contaminant sources were located. In the instant case, however, the state regulation affects the supply of electric service by independent public utility companies to a local public school board. No interference with a federal governmental function or activity results from the exercise of the Commission’s jurisdiction, which is totally within its authority under the particular facts in the record. Nor is the United States here to protest the regulation of this service to the school within the bounds of Fort Polk.
These facts show that Beauregard’s agreement to provide electrical service was entered into with the Vernon Parish School Board, a local governmental entity. Neither the Vernon Parish School Board nor Beauregard Electric are federal instrumen-talities; Vernon Parish School Board is a lessee of the federal government and Beauregard is an independent contractor, a public utility company subject to the jurisdiction of the Louisiana Public Service Commission under the authority granted to it under the laws of our State. La.Rev. Stat. 45:1164.
The mere fact that the school to be owned and operated by the Vernon Parish School Board and to be supplied service by Beauregard has its site on a United States military installation is not by itself determinative of the question of the propriety of the exercise of the Commission’s jurisdiction. Beauregard argues that the right of way granted by the United States through the Department of the Army clearly denotes the exclusive nature of federal jurisdiction over the property, thus barring the Commission’s regulation. But the grant of the right of way easement by the United States here should not be construed as an implied exercise of federal control over the operation of a public utility so as to bar the jurisdiction of this state’s regulatory body. Furthermore, the grant of the right of way, although perhaps not an express consent to state regulation by the United States Government, does not make the United States a party to the agreement for service between Beauregard and the Vernon Parish School Board.
As the United States Government has taken no position in this customer service dispute, we must assume that this is a situation where Congress has not acted to exercise its exclusive jurisdiction and to erect a wall of federal governmental immunity around this area. In considering the validity of state and municipal ad valorem taxes on privately owned property leased to the United States and located on sites owned and occupied by the United States, in International Business Machines Corporation v. Ott, 230 La. 666, 89 So.2d 193 (1956), this court looked to evidence showing that various services, such as fire protection, sewage and water service, and drainage facilities, were supplied by the city to these sites and were accepted by the United States. This court held that the United States’ acceptance of these services without an expression of an intention to exercise exclusive juris *410 diction in providing such services manifested an intent by the federal government not to accept the grant of exclusive jurisdiction over the sites. In the instant case, the evidence showing that CLECO, a public utility company, provides electric service to a state-supported university on the Fort Polk installation and that the United States entered into a lease with the Vernon Parish School Board for the placement of the public elementary school on the reservation implies an intention on the part of the United States not to accept exclusive jurisdiction in these areas. Especially where, as here, no action has been taken by the federal authority to provide electric service and no interference with the operation of the federal installation has resulted from the regulation, the rendering of the Commission order was within its jurisdiction and must be upheld. Beauregard’s first assignment is without merit.
Beauregard’s second assignment of error, that the finding of the Commission that Beauregard’s service to the school site is a violation of the Commission’s General Order of March 12, 1974 is contrary to the facts and the law and is arbitrary, capricious and unreasonable is likewise without merit. The Commission order in question provides
“. . . [tjhat no extension of electric transmission or distribution lines shall be made by an electric public utility that will duplicate the transmission and distribution lines of another like utility, nor shall extensions be made to serve customers that could be served from such electric public utility facilities already in existence in an economic and justifiable manner.”
As this court recognized in Louisiana Power & Light Co. v. Louisiana Public Service Commission, 353 So.2d 718 (La.1977), this Commission order “purports to require the most economical and least wasteful utilization and development of electric public utility facilities.” Id. at 720. The order provides in keeping with the public interest that paralleling, duplication or extension of existing transmission lines to serve customers that can receive service from a utility company already providing service in the immediate area is prohibited in order to prevent unwise expenditures and wasteful competition and investments. Id. See also Louisiana Power & Light Co. v. Louisiana Public Service Commission, 343 So.2d 1040 (La.1977).
As this court has consistently held, the orders of the Commission are entitled to great weight and are not to be overturned on judicial review, unless shown to be arbitrary, capricious, or abusive of the commission’s authority. Louisiana Oilfield Carriers Ass’n, Inc. v. Louisiana Public Service Commission, 281 So.2d 698 (La.1973) and authorities cited therein; Louisiana Power & Light Co. v. Louisiana Public Service Commission, 343 So.2d 1040 (La.1977). A ruling of the Commission may not be deemed arbitrary unless it is shown that it is not supported by some factual evidence. The person attacking the order bears the burden of showing that it is defective, since it is presumed valid. Louisiana Power & Light Co. v. Louisiana Public Service Commission, 343 So.2d 1040, 1044 (La.1977).
The facts discussed at the outset of this opinion, when considered along with the testimony given at the Commission hearing, show an ample factual basis supporting the Commission’s order in the instant case. Beauregard does not dispute the finding -that its extension duplicates service provided by a pre-existing L.P. & L. line, but focuses instead upon the comparative cost of service between the two utility companies and the calculation of such costs. Beauregard claims that L.P. & L.’s estimated cost did not include the cost of additional transformers necessary in order to provide service from L.P. & L.’s existing 34.5 KV line. Beauregard also claims that even with the addition to its estimated cost of the expense involved in installation of underground wiring and of one other transformer, Beauregard’s total cost would be between $13,647 and $15,647, as compared to L.P. & L.’s estimate of between $15,643 and $16,643. Finally, Beauregard argues that the elementary school site is within its service area as defined by the General Or *411 der, and that even though L.P. & L.’s lines are admittedly closer to the school site, the facts show that it can provide service more economically than can L.P. & L.
Beauregard’s claim that it can provide service to the school at a lower cost than can L.P. & L. does not support its contention that the Commission order is arbitrary, capricious and unreasonable or contrary to the law and the facts. Especially when the projected costs are estimates and the cost of the transformers which either company would require were not priced exactly at the Commission hearing, Beauregard’s argument of lower comparative cost is not entirely supported by the record. Since the record does reflect that Beauregard’s extension would duplicate existing lines of L.P. & L. because of the relative placement of the points of service in the service areas of the utility companies, the Commission’s order that Beauregard’s extension was constructed in violation of its General Order of March 12, 1974 is not contrary to the facts or to the law.
For the reasons assigned, the judgment of the district court is affirmed.