SUMMERS, Chief Justice.
In December of 1976 Gulf States Utilities Company petitioned for a cease and desist order from the Louisiana Public Service Commission. It alleged that Dixie Electric Membership Corporation had or was extending electric service to a lift station and sewerage treatment plant for the town of Livingston in violation of Section 123 of Title 45 of the Revised Statutes [1] and the *434 Commission’s General Order of March 12, 1974 entitled “Duplication of Electric Service.” [2]
Gulf States has, since 1957, maintained and operated an electric distribution line in the town of Livingston and along Red Oak Road in and just south of the town. Its facilities were available to provide electric service to any development in that area. In August 1975, Dixie extended its lines to serve a lift station and treatment plant just south of the town of Livingston, its line being parallel to and within eighty feet of Gulf States’ facilities along Red Oak Road. The cost of this extension by Dixie is estimated at $33,000. In order to accomplish this extension Dixie converted an existing single-phase line to a three-phase line and constructed a new three-phase line which paralleled an existing Gulf States line along Red Oak Road. Dixie’s point of connection to the new plant was within 300 feet of' Gulf States’ line along Red Oak Road which Gulf States contends is in violation of Section 123 of Title 45 of the Revised Statutes. Gulf States also complained Dixie’s overall extensions represented duplication of existing electric distribution facilities in disregard of the Commission’s General Order of 1974 issued by the Commission to eliminate such duplication of electric service.
The matter was heard on May 27, 1977 by an appointed examiner for the Commission. In a decision rendered by three members of the Commission with two dissents on December 15,1977, the Commission dismissed Gulf States’ complaint finding that the expansion of the single-phase line to three-phase by Dixie did not violate Section 123. Dixie’s expansion, the Commission found, was part of its overall 1973-74 work plan. Additionally, the Commission held that the construction of a new three-phase line to the treatment facility did not violate its General Order because the parallel line of Gulf States was preemptive; that is, it was constructed to serve no potential customer and built in order to preempt other utility company expansion.[3] Finally, the Commission ruled that the line constructed by Dixie to the facilities was permissible because it served to accommodate customer choice for a facility whose main point of connection at the treatment plant was beyond the 300-foot prohibition of Section 123.
Pursuant to Section 21(E) of Article IV of the Constitution, and Section 1192 of Title 45 of the Revised Statutes, Gulf States appealed to the Nineteenth Judicial District Court, alleging that the Commission order was arbitrary, capricious and unreasonable and was based upon an error of law. Accordingly, Gulf States prayed that the Commission’s order be reversed and that Dixie be prohibited from providing electric service to the lift station and treatment plant and that the newly constructed line to that facility be removed.
Based upon a stipulation of the parties the District Court rendered its judgment on August 16, 1974 upon the record made before the Commission. The District Court held that Dixie had unlawfully extended its ' *435 meter connection to one section of the facility, the lift station, which was located 132 feet from an existing Gulf States customer along Red Oak Road, and, therefore, Dixie’s meter connection had to be removed. However, the court found that Dixie’s meter to the treatment plant was outside the 300-foot perimeter of Gulf States’ customer along Red Oak Road and service by Dixie to the treatment plant could continue. The Commission’s order allowing Dixie to expand its single-phase line to three-phase to service the plant was upheld by the trial judge based upon his understanding of this Court’s standard for judicial review of decisions involving Commission interpretation of its orders and regulations.
Thus the trial court ruling, in effect, allowed both utilities to provide service to the sewerage plant, Gulf States to the lift station and Dixie to the treatment plant, causing a division in customer service.
Gulf States appealed to this Court contending that the District Court erred 1) in finding that Dixie could legally provide electric service to the treatment plant, 2) in applying the regulatory law and policy of the State to the facts of this case and 3) in refusing to recognize Gulf States’ right and duty to provide electric service to the treatment plant.
Dixie answered the appeal contending that the trial court erred in its finding that Dixie unlawfully extended an electric line to furnish electric service to the lift station, praying that the judgment be modified to permit it to serve both the lift station and the treatment plant.
Reference to this record and particularly the exhibits establish that Dixie multi-phased approximately four miles of one-phase line and built approximately 3,000 feet of new line parallel to Gulf States’ existing line to serve a meter point within 150 feet of Gulf States’ existing line.
Heretofore, in Louisiana Power & Light Co. v. Louisiana Public Service Commission, 353 So.2d 718 (La.1977), the Commission rendered an order finding
“that the purpose of its General Order dated March 12, 1974, entitled ‘Duplication of Electric Service’ was to effect economics in the service of electricity and thus keep rates within reasonable bounds. Uneconomic and wasteful practices are prohibited. The extension of facilities by one electric utility to serve customers readily accessible by facilities of an electric public utility already providing service in the immediate area is not in the public interest and such practices ultimately lead to wasteful competition and unwise expenditures. The facilities constructed by Louisiana Power and Light Company clearly indicate a wasteful practice since the existing facilities of Claiborne can serve the prospective customers at lesser costs by simple extensions of the existing facilities.” (emphasis added).
This interpretation of the 1974 General Order is particularly pertinent here. What Dixie has done in the case at hand falls squarely within the Commission interpretation of its 1974 General Order in Louisiana Power & Light Co. v. Louisiana Public Service Commission, supra.
Our interpretation of the 1974 General Order in that same case is also appropriate here:
“The Commission’s General Order of March 12, 1974, which Louisiana Power asserts does not support the decision in this case, purports to require the most economical and least wasteful utilization and development of electric public utility facilities. The order was promulgated to effect economics in the service of electricity, maintain rates within reasonable bounds, and prohibit uneconomic and wasteful practices. Paralleling and duplication of existing transmission and distribution lines or the extension of either by electric public utilities to serve customers readily accessible to like facilities of an electric public utility already providing service in the immediate area is not in the public interest according to the order. Such practices ultimately lead to wasteful competition and unwise expenditures and investments burdening the rate payer.
*436 “The order recognizes that in some areas there is no clear line of demarcation between the service area of public utilities, and finds that the service area of an electric public utility is that area which, as a result of the existence of transmission and distribution lines, is readily accessible by economically feasible extensions from such existing facilities, including customers already receiving service.” 353 So.2d at 720 (emphasis added).
In the instant case in addition to rephasing four miles of existing lines, Dixie constructed 3,000 feet of new line paralleling Gulf States’ existing lines to serve the town’s sewerage facility. At that time Gulf States line was 155 feet from the lift station and 630 additional feet from the sewerage plant. Clearly when Dixie metered the lift station 155 feet from Gulf States’ lines it violated Section 123’s mandate that
“No electric public utility shall construct or extend its facilities, or furnish, or offer to furnish electric service to any point of connection which at the time of the proposed construction, extension or service is being served by, or which is not being served but is located within 300 feet of an electric line of another electric public utility, except with the consent in writing of such other electric public utility . . .”
And under the Commission’s interpretation of its 1974 General Order and this Court’s like interpretation, permitting Dixie to serve the treatment plant a mere 630 feet away from Gulf States meter at the lift station under the facts of this case is not in the public interest. Such a practice will ultimately lead to wasteful competition and unwise expenditures and investments burdening the rate payer.
Undoubtedly Gulf States was capable of furnishing the most economical and least wasteful service, without the necessity of the extensions required by Dixie. In effect Gulf States was already providing service in the immediate area and the broader proscriptions of the 1974 General Order against duplication of facilities “readily accessible” within the “immediate area” of existing facilities is applicable. This decision is moreover consistent with the Commission’s former application of the 1974 General Order to a similar situation in Louisiana Power & Light Co. v. Louisiana Public Service Commission, 353 So.2d 718 (La.1977).
For the reasons assigned, the judgment of the trial court is affirmed insofar as it required Dixie to dismantle that portion of the Red Oak Road line which extends service to the lift station with Gulf States to provide this service.
It is further ordered, that there be judgment herein reversing that part of the Commission’s Order Number U-13278 allowing Dixie to continue to serve the treatment plant, and Dixie is ordered to dismantle that portion of the Red Oak Road line which extends electric service to the treatment plant.

. La.Rev.Stat. 45:123:
“No electric public utility shall construct or extend its facilities, or furnish, or offer to furnish electric service to any point of connection which at the time of the proposed construction, extension, or service is being served by, or which is not being served but is located within 300 feet of an electric line of another electric public utility, except with the consent in writing of such other electric public utility; provided, however, that nothing contained herein shall preclude (a) any electric public utility from extending service to an applicant for service at an unserved point of connection located within 300 feet of an existing electric line of such electric public utility, unless (i) such line was not in operation on April 1, 1970 and (ii) the point of connection is located within 300 feet of an existing electric line, of another electric public utility, which line was in operation on said date, or (b) any electric public utility from extending service to its own property, or to another electric public utility for resale; and provided further that any consumer who feels aggrieved with the electric service being received by him may apply to the Louisiana Public Service Commission for an order directed to his present supplier to show cause why the consumer should not be released from said supplier, and if the commission shall find that the service rendered to such consumer is inadequate and will not be rendered adequate within a reasonable time the release shall be granted.
“As used in this section, and ‘electric line’ is a line constructed and operated for the transmission and/or distribution of electricity and which was not originally constructed for the principal purpose of preempting territory.
“The provisions of this section shall not apply to municipally-owned or operated utilities of the State of Louisiana or to the parish of Orleans. Nothing in R.S. 45:121, 45:123, 45:1161, 45:1175 or R.S. 12:426 shall alter the rights or authority of municipalities.”

. The order mandates:
“[T]hat no extension of electric transmission or distribution lines shall be made by an electric public utility that will duplicate the transmission and distribution lines (as defined in Louisiana Revised Statute 45:123) of another like utility, nor shall extensions be made to serve customers that could be served from such electric public utility facilities already in existence in an economic and justifiable manner.”

. This finding of the Commission violates its well-established rule in three separate adjudications involving these parties. In Dixie Electric Membership Corporation v. Gulf States Utilities Company, Docket No. U-12806, the Commission held: “The Commission is of the opinion that lines erected prior to April 1, 1970 should not be declared preemptive.” In Gulf States Utilities vs. Dixie Electric Membership Corporation, Docket No. U-12846 the Commission held: “The Commission is of the opinion that lines erected prior to April 1, 1970 should not be declared preemptive.” Again in Gulf States Utilities Company v. Dixie Electric Membership Corporation, Docket No. U-12851, the Commission held: “The Commission is of the opinion that lines erected prior to April 1, 1970 should not be declared preemptive.” Because Gulf States’ line along Red Oak Road was erected in 1957 the Commission could not find it to be preemptive under its repeated decisions. It would be arbitrary and capricious to do so.