DIXON, Justice.
Plaintiff, Louisiana Power & Light Company (LP&L), filed a complaint with the Louisiana Public Service Commission alleging that intervenor, South Louisiana Electric Cooperative Association (SLE-CA), had violated either R.S. 45:123 by extending its electric line beyond the 300 foot radius provided therein, or the Commission’s General Order of March 12, 1974. Finding no merit in this contention, the Commission dismissed LP&L’s complaint. From the district court judgment affirming the Commission’s disposition, LP&L appeals directly to this court. La. Const, of 1974, art. 4, § 21(E).
The dispute between LP&L and SLECA concerns the right to provide electrical service to South Coast Corporation at its building located at the intersection of Woodlawn Ranch Road and Louisiana Highway 57 in Terrebonne Parish. Upon customer request, SLECA rendered service to the building. In this action, LP&L seeks to have SLECA’s lines removed and to have LP&L recognized as the sole utility authorized to provide service to South Coast’s building. .
Previous to the time SLECA rendered service to South Coast Corporation, it owned a distribution line running along Highway 57, a distance in excess of 300 feet from the metering point of the building. From this distribution line ran a service drop which provided service to the street light at the intersection of the two thoroughfares and to construction crews during the construction of the building. This service line is within 300 feet of the metering point.
LP&L owned a transmission and distribution line which ran along Woodlawn Ranch Road, easily within 300 feet of the metering point.
LP&L argues that the term “electric line” as used in R.S. 45:123 does not contemplate a service drop such as used in the case before us to service the street light and construction crews.
R.S. 45:123 reads in relevant part:
“No electric public utility shall construct or extend its facilities, or furnish, or offer to furnish electric service to any point of connection which at the time of the proposed construction, extension, or service. is being served by, or which is not being served but is located within 300 feet of an electric line of another electric public utility, except with the consent in writing of such other electric public utility; provided, however, that nothing contained herein shall preclude (a) any electric public utility from extending service to an applicant for service at an unserved point of connection located within 300 feet of an existing electric line of such electric public utility, unless (i) such line was not in operation on April 1, 1970 and (ii) the point of connection is located within 300 feet of an existing electric line, of another electric public utility, which line was in operation on said date, or (b) any electric public utility from extending service to its own property, or to another electric public utility for resale; and provided further that any consumer who feels aggrieved with the electric service being received by him may apply to the Louisiana Public Service Commission for an order directed to his present supplier to show cause why the consumer should not be released from said supplier, and if the commission shall find that the service rendered to such consumer is inadequate and will not be rendered adequate *429 within a reasonable time the release shall be granted.
“As used in this section, an 'electric line’ is a line constructed and operated for the transmission and/or distribution of electricity and which was not originally constructed for the principal purpose of preempting territory.”
The Commission found that the service drop did qualify as an “electric line,” that it was within 300 feet of the metering point and, therefore, that because both utilities had existing lines within 300 feet of the metering point the choice was left to the customer.
According to the settled jurisprudence of this court, the decisions of the Commission are to be accorded great weight and are not to be disturbed unless found to be clearly erroneous or unsupported by the evidence. Monochem, Inc. v. Louisiana Public Service Com’n., 253 La. 1047, 221 So.2d 504 (1969); Arkansas & La. Mo. Ry. Co. v. Louisiana Public Service Com’n., 251 La. 963, 207 So.2d 760 (La.1968).
We cannot find that the Commission’s conclusion is clearly erroneous. The evidence shows clearly that the service drop distributed electricity not only to the street light but also to the construction site during construction of the building. The definition of “electric line” provided by the statute includes any line which is operated for the “transmission and/or distribution of electricity” and is not limited to lines which are labeled transmission or distribution lines by the utility industry. Hence the Commission’s finding that the service drop here involved constitutes an “electric line” for purposes of R.S. 45:123 is supported by the record before us.
LP&L further argues that SLECA violated the Commission’s General Order of March 12, 1974, which reads in relevant part as follows :
[It is ordered]
“That no extension of electric transmission or distribution lines shall be made by an electric public utility that will duplicate the transmission and distribution lines (as defined in Louisiana Revised Statutes 45:123) of another like utility, nor shall extension be made to serve customers that could be served from such electric public utility facilities already in existence in an economic and justifiable manner. If a public utility, for good cause, refuses to serve a prospective customer within its service area, another like utility may serve the said customer upon written authority of this Commission.”
Yet the Commission’s finding in the case before us refuted this contention:
“We further find that the difference of construction costs would not merit the application of this Commission’s General Order dated March 12, 1974 dealing with Duplication of Electric Service since both utilities can serve South Coast Corporation in an economic and justifiable matter (sic).”
The Commission heard conflicting testimony as to the difference in the cost of the service offered by each utility. The only evidence supporting LP&L’s contention is testimony by one of its employees, Mr. Williamson, to the effect that LP&L could construct the line for $800 less than SLE-CA could. This estimate, however, was based on Mr. Williamson’s suggestion that the figure to which SLECA’s witness testified was erroneous. Mr. Williamson testified that he “knew for a fact” that SLE-CA could not purchase transformers for the price quoted in the estimate. This does not provide a basis for the contention that *430 the action taken by the Commission was clearly erroneous or unsupported by the evidence.
The judgment of the district court is affirmed, at plaintiff’s cost.