BOLIN, Justice.
This is an appeal by Louisiana Power and Light Company from the judgment of the district court of East Baton Rouge Parish which modified an order of the Public Service Commission. Because the aforesaid order of the Commission does not definitively dispose of all the issues presented by this case, we remand the entire matter to the Commission for clarification and for whatever proceedings it deems proper in light of this opinion.
The present controversy involves the Public Service Commission’s regulation of competition between two electric public utilities in Terrebonne Parish near Houma. South Louisiana Electric Cooperative Association (SLECA) has had for a number of years a powerline along the parish road which parallels Big Bayou Black. On May 21, 1973, Louisiana Power and Light Company (LP&L) began constructing an electric line along Savanne Road in Terre-bonne Parish ostensibly to service a street light at the southern end of the line. The line, which extends for five miles, was completed and energized on May 25, 1973.
Soon thereafter, SLECA filed a petition for a cease and desist order and a complaint with the Public Service Commission alleging first that the street light installed at the southern extremity of the LP&L line was within 300 feet of SLECA’s existing powerline along the Big Bayou Black Road. SLECA alleged that the LP&L line had been constructed in contravention of La.R.S. 45:123. (This generally prohibits construction of electric facilities within 300 feet of an existing electric line of another utility.)[1] SLECA alleged the LP&L line had been constructed without proper authority and solely for the purpose of gaining the privilege of preempting power distribution within 300 feet of the line under the provisions of La.R.S. 45:123. SLECA prayed that LP&L be required to dismantle its Savanne Road powerline because its construction and maintenance were wasteful and illegal.
Before answering SLECA’s complaint, LP&L moved the streetlight in question to a distance in excess of 300 feet from the SLECA Bayou Black line. In the meantime, beginning on May 25, 1973, SLECA constructed its own 7000-foot powerline *432 along Savanne Road, paralleling and running ten to twenty-two feet from the LP&L line. At the northern end of the SLECA line were a nightwatchman light erected by SLECA and a water pump operated by the owner of property adjacent to Savanne Road. SLECA’s claimed motive for building the line was to provide electric power for the light and pump.
LP&L answered SLECA’s complaint by stating the original placement of its streetlight was inadvertant and that it had been moved so it was no longer within 300 feet of SLECA’s Bayou Black line. It then denied it had constructed its powerline solely for the purpose of preempting electric distribution, arguing that the line’s purpose was to supply power to the streetlight it had erected and to later form part of a loop connection to other LP&L powerlines in the area. LP&L also filed a reconven-tional demand with its answer, alleging SLECA’s Savanne Road line was illegally constructed within 300 feet of its own existing line. It further alleged the line was not a true “electric line” within the meaning of La.R.S. 45:123 but was merely built to preempt. Thus, LP&L prayed that SLECA be ordered to dismantle its Sa-vanne Road line.
The Public Service Commission, after a hearing, ordered LP&L to dismantle its powerline along Savanne Road, finding that it did not meet the criteria of an “electric line” under La.R.S. 45:123 in that it was constructed to preempt territory. The Commission, however, did not pass directly upon LP&L’s reconventional demand, which contained substantially the same allegation against SLECA.[2]
LP&L then appealed from the ruling of the Commission to the district court of East Baton Rouge Parish. That court took additional testimony and modified the order of the Commission. The court found that the LP&L line was constructed to serve the legitimate purpose of forming part of a loop with other powerlines in the area, and thus allowed the utility to retain the line and to use it for the limited purpose of looping with other facilities. LP&L then appealed from the judgment of the district court directly to this Court as allowed by La.Const. art. 4, § 21(E) (1974).
As mentioned earlier, the Public Service Commission has apparently failed to consider and resolve the issues presented by the reconventional demand filed in the instant suit. The order of the Commission could be interpreted as a tacit rejection of LP&L’s claims, presumably based upon the finding that the SLECA line was not constructed merely for the purpose of preempting the 300 foot corridor along the line. If this interpretation be accepted the Commission could understandably have rejected the other ground supporting LP&L’s demand (that SLECA’s construction of its powerline within 300 feet of the LP&L line violated La.R.S. 45:123) on the basis that the LP&L line was not a bona fide “electric line” with preemptive efficacy.
However, we do not choose to infer from the Commission’s silence that it has rejected the reconventional demand when the failure to dispose of the claim may have merely been an oversight. Moreover, we cannot effectively review a Commission ruling that the SLECA line is not to be dismantled unless we know the factual and policy bases upon which that ruling was made.
We also decline to review at this time that part of the case that is properly *433 before us (the order of the Commission restricting the use of the LP&L powerline). The original complaint and the apparently unconsidered reconventional demand involve such similar legal and factual issues that the Commission’s disposition of one claim may well influence our estimation of the correctness of its resolution of the other. Moreover, should the Commission rule that SLECA must dismantle or restrict the use of its line, the utility will undoubtedly raise many of the same issues on appeal which have been urged herein by LP&L. In anticipation of this possibility, we prefer to defer our consideration of these arguments for the sake of judicial economy and a more orderly disposition of the entire case. If either or both parties are dissatisfied with the Commission’s eventual disposition of this whole case, the entire matter may be brought before this Court on appeal.
For the reasons assigned, this case is remanded to the Public Service Commission for proceedings consistent with this opinion.

. La.R.S. 45:123 provides:
“No electric public utility shall construct or extend its facilities, or furnish, or offer to furnish electric service to any point of connection which at the time of the proposed construction, extension, or service is being served by, or which is not being served but is located within 300 feet of an electric line of another electric public utility, except with the consent in writing of such other electric public utility; provided, however, that nothing contained herein shall preclude (a) any electric public utility from extending service to an applicant for service at an un-served point of connection located within 300 feet of an existing electric line of such electric public utility, unless (i) such line was not in operation on April 1, 1970 and (ii) the point of connection is located within 300 feet of an existing electric line, of another electric public utility, which line was in operation on said date, or (b) any electric public utility from extending service to its own property, or to another electric public utility for resale; and provided further that any consumer who feels aggrieved with the elec-trie service being received by him may apply to the Louisiana Public Service Commission for an order directed to his present supplier to show cause why the consumer should not be released from said supplier, and if the commission shall find that the service rendered to such consumer is inadequate and will not be rendered adequate within a reasonable time the release shall be granted.
“As used in this section, an ‘electric line’ is a line constructed and operated for the transmission and/or distribution of electricity and which was not originally constructed for the principal purpose of preempting territory.
“The provisions of this section shall not apply to municipally-owned or operated utilities of the State of Louisiana or to the parish of Orleans. Nothing in R.S. 45:121, 45:123, 45:1161, 45:1175 or R.S. 12:426 shall alter the rights or authority of municipalities with respect to franchise.”
We recently explained the meaning of this statute in the case of Louisiana Power and Light Company v. Louisiana Public Service Commission, 324 So.2d 430 (La.1975).

. Commissioner Knight dissented from the order of the Commission on the basis that “ * * * both constructions violate the principle of plant economy and should be dismantled, to avoid the allocation of territory based on an improper act and expenditure.” Although this seems to indicate that the re-conventional demand was considered and rejected by the other two members of the Commission, we decline to infer such a rejection when the order of the Commission in no way disposes of or refers to LP&L’s allegations against SLEICA.