358 So.2d 623 (1978)
LOUISIANA POWER & LIGHT CO., Plaintiff-Appellant,
v.
LOUISIANA PUBLIC SERVICE COMMISSION et al., Defendant and Intervenor-Appellees.
No. 60851.
Supreme Court of Louisiana.
April 10, 1978.
Dissenting Opinion On Denial of Rehearing May 19, 1978.
*624 Stanwood R. Duval, Jr., James M. Funderburk, Duval, Arceneaux, Lewis & Funderburk, Houma, for defendants-appellees.
Andrew P. Carter, Eugene G. Taggart, Monroe & Lemann, New Orleans, for plaintiff-appellant.
TATE, Justice.
The issue before us concerns whether either or both of two competing utilities erected "pre-emptive" lines in violation of La.R.S. 45:123 (1970).
Upon complaint of the South Louisiana Electric Cooperative Association ("SLECA"), the Louisiana Public Service Commission determined that the Louisiana Power & Light Company ("Louisiana Power") had, in violation of the cited statute, constructed a transmission line within 300 feet of an electrical transmission line serviced by SLECA. After remand of a first appeal to this court, 324 So.2d 430 (La.1975), the Commission likewise dismissed Louisiana Power's reconventional demand; this, similarly, had sought a determination that SLECA's *625 construction of a transmission line paralleling Louisiana Power's was likewise an illegal pre-emptive line.[1]
Louisiana Power sought judicial review of these determinations of the Commission. La.Const. of 1974, Art. 4, Section 21(E). SLECA intervened in the district court proceedings. That court affirmed the Commission's determinations, and Louisiana Power appeals.

(1)
Preliminarily, we note that La.R.S. 45:123 prohibits (with exceptions not here material) any electric public utility from constructing a transmission or distribution line to any point of connection within 300 feet of an electrical transmission line of another public utility. The statute deems as thereby prohibited any line "originally constructed for the principal purpose of pre-empting territory."
The statute has been upheld as a valid regulation of duplication of utility electric service facilities, thereby intended to minimize the greater cost of electricity to consumers resulting from unnecessary duplicative electric plant facilities. The courts have further held that the constitutional regulatory power of the Commission, in effectuation of the statutory policy, includes within its scope orders to dismantle lines found to be pre-emptive or (as in this case) restricting their use to purposes not involving distribution of electricity to customers along the pre-emptive line.
See: Central Louisiana Electric Co. v. Louisiana Public Service Comm'n, 344 So.2d 1046 (La.1977); Louisiana Power & Light Co. v. Louisiana Public Service Comm'n, 322 So.2d 133 (La.1975); South Louisiana Electric Co-operative Ass'n v. Louisiana Public Service Comm'n, 309 So.2d 287 (La.1975). See also: Louisiana Power & Light Co. v. Louisiana Public Service Comm'n, 343 So.2d 1040 (La.1977); Louisiana Power & Light Co. v. Louisiana Public Service Comm'n, 324 So.2d 427 (La.1975); Louisiana Power & Light Co. v. Louisiana Public Service Comm'n, 322 So.2d 133 (La.1975).

(2)
On its appeal, Louisiana Power does not contest these principles. Rather, as we understand its arguments, Louisiana Power contests only the Commission determinations (a) that Louisiana Power's line was pre-emptive in purpose and therefore within the statutory prohibition and (b) that SLECA's line was not constructed for the principal purpose of pre-empting territory and, consequently, was "a line constructed and operated for the transmission and/or distribution of electricity", La.R.S. 45:123, within the meaning and protection of that statute.
Louisiana Power essentially contends that the Commission's determinations and its findings of fact are arbitrary and unreasonable and made without substantial evidence to support them.

(3)
In Louisiana Power & Light Co. v. Louisiana Public Service Comm'n, 343 So.2d 1040, 1044 (La.1977), we once again reiterated the principles that apply to judicial review of a commission order, as follows:
The orders of the commission are entitled to great weight and are not to be overturned on judicial review, unless shown to be arbitrary, capricious, or abusive of the commission's authority. Louisiana Oilfield Carriers Ass'n, Inc. v. Louisiana Public Service Commission, 281 So.2d 698 (La.1973) and many decisions therein cited. As there noted, a person attacking a commission order bears the burden of demonstrating that it is defective, since the order is presumed to be valid. See also Monochem, Inc. v. Louisiana Public Service Commission, 253 La. 1047, 221 So.2d 504 (1969).
*626 Further, while a ruling of the commission may be deemed arbitrary unless supported by some factual evidence, the function of the court on judicial review is not to re-weigh and re-evaluate the evidence and to substitute its judgment for that of the administrative agency constitutionally entrusted with regulation of the matter. Truck Service, Inc. v. Louisiana Public Service Comm'n, 263 La. 588, 268 So.2d 666 (1972). As reiterated in Rubion Transfer and Storage Co. v. Louisiana Public Service Commission, 240 La. 440, 123 So.2d 880, 884 (1960): "`* * * Whenever the Public Service Commission, in the issuing of an order, has acted within its power, and not arbitrarily or grossly contrary to the evidence, and when no error of law has been committed, the court must not substitute its judgment for that of the commission, or consider the expediency or wisdom of the order, or say whether on like evidence the court would have made a similar ruling.'"

(4)
Reviewed in the light of these principles, the Commission's findings of fact and its determinations will not be disturbed.
Prior to the controversy, Louisiana Power had transmission lines along the Little Bayou Black Road, a state highway. SLECA had transmission lines along the (main) Bayou Black state highway. At the point in controversy, the SLECA installations were some three miles south of and parallel to Louisiana Power's.
The Bayou Black and the Little Bayou Black state highways were connected at the point by Savanne Road, which had been constructed by the parish in 1972. The lands along this road were undeveloped; however, Conrad Lirette, one of the two landowners, was planning to open a subdivision. He had for several years discussed with SLECA his intention for that utility to furnish the electric service. About three days before Louisiana Power commenced its line, he applied to SLECA for a transmission line to service a site in his proposed subdivision.
Louisiana Power had been negotiating unsuccessfully with Southdown Sugar, another landowner, for a power-line right of way along the northern part of the Savanne Road. Abandoning these attempts to secure a right of way, on May 21, 1973 (three days after the Lirette request) Louisiana Power within four days quickly constructed on the police jury road right of way the 3.1 line here in question.[2]
The line commenced from the Louisiana Power lines on the Little Bayou Black and terminated at its southerly end (near Bayou Black) at a point 156 feet from an existing SLECA transmission outlet.
The line terminated at a street light installed by Louisiana Power upon its completion. A police juror had allegedly requested installation of the light the day the construction of the line was completed; however, the date of his request is shown to be May 25. Immediately prior to SLECA's complaint before the commission, Louisiana Power relocated the streetlight northerly to a point some 350 feet from the SLECA line.
Substantial evidence thus supports the commission's determination that Louisiana Power's 3.1 mile line was principally built to pre-empt territory, in violation of La.R.S. 45:123, rather than having been constructed as a bona fide transmission line. Louisiana Power's hurried construction of the line, after its unsuccessful attempts to obtain a right of way, occurred after the landowner Lirette had formally applied for SLECA service. The entire southerly end of this line was built to service only one street light, for which Louisiana Power solicited an application from the police juror almost simultaneously with, if not subsequent to, the construction of the line. Testimony in the record further indicates that the usual practice is for police jurors to request installation of such services; not for the power company to seek an application for such an installation, and to build at $16,000 cost *627 a line for the sole purpose of servicing street lights.
Nor do we find impressive, in view of the commission's rejection of them, Louisiana Power's other non-pre-emptive justifications for the sudden construction of the line in 1973: (a) a 1970 permission by the police jury to Louisiana Power to construct ten streetlights on the Ward 2 (northerly) part of the line, which Louisiana Power did not act upon until it suddenly constructed its line in 1973, not only in Ward 2 but into Ward 9 in which the Lirette property was located; (b) Louisiana Power's plans since 1970 to build a loop or feeder line down Savanne Road to connect its Little Bayou Black lines with other lines it maintained at some distance from the Bayou Black (southerly) end of the Savanne Road line.[3]
Likewise, having found the Louisiana Power line to be prohibited as a construction primarily for the purpose of pre-empting the service to the territory, we find no difficulty in affirming the commission's determination that the SLECA line to the Lirette property (some 7,000 feet along Savanne Road) was constructed for proper transmission purposes. Prior to construction of the Louisiana Power line, Lirette had entered into discussions with SLECA for it to service the subdivision he planned off Savanne Road and had granted SLECA a right of way for that purpose. Three days before Louisiana Power constructed its line, in fact, Lirette had applied in writing to SLECA for it to furnish services to a watchman's light and a meter for his projected subdivision. Under the evidence, we cannot find arbitrary the commission's acceptance of such testimony as proving good faith construction by SLECA of its transmission line to the Lirette property.

Decree
For the reasons assigned, we affirm the Commission's orders and determinations. All costs are assessed against the plaintiff-appellant.
AFFIRMED.
SANDERS, C. J., dissents.
SUMMERS, J., dissents and assigns reasons.
SUMMERS, Justice (dissenting).
By its petition dated June 27, 1973 South Louisiana Electric Cooperative Association (SLECA) complained to the Public Service Commission that Louisiana Power & Light Company (LP&L) had constructed an electric transmission or distribution line for approximately 3 miles along Savanne Road in Terrebonne Parish for the purpose of preempting territory contrary to the provisions of Section 123 of Title 45 of the Revised Statutes.[1] By that line, it was alleged, *628 LP&L was servicing a street light within 300 feet of SLECA's existing lines. SLECA asked that LP&L be restrained from providing any electric service with that line and that the line be removed.
LP&L answered resisting SLECA's claim and reconvened alleging that it had constructed its line under a parish-wide franchise in anticipation of the development along the newly constructed Savanne Road and to service street lights there. Upon completion of LP&L's line SLECA constructed an electric line parallel to LP&L's existing line a distance of 1.3 miles. SLECA's line is alleged to be a duplication of LP&L's line, and an attempt to preempt territory contrary to Section 123 of Title 45. LP&L prayed that SLECA's line be dismantled.
A hearing was held before the Commission on October 24, 1973 and the Commission issued its Order No. U-12359 on May 3, 1974, finding that the line constructed by LP&L did not meet the criteria of an "electric line" as defined by Section 123, that being, "a line constructed and operated for the transmission and/or distribution of electricity and which was not originally constructed for the principal purpose of preempting territory." The Commission also found that the only customer connected by LP&L to its line was a street light within 300 feet of SLECA's line and there were no other prospective customers en route.
One member of the then three member Commission dissented, saying "both constructions violate the principle of plant economy and should be dismantled to avoid the allocation of territory based on an improper act and expenditure."
LP&L appealed to the District Court, the Commission filed its denial, and SLECA intervened in support of the Commission. After hearing additional evidence from LP&L to the effect that its line was required as a loop or tie line between its substations in the surrounding areas, the District Judge remanded the case to the Commission in light of the additional evidence.
Upon reconsideration the Commission issued its Order No. U-12359-A. In light of the additional testimony it concluded that it would serve no useful purpose to order LP&L to dismantle its line. It ordered, therefore, that the line be designated as a part of a loop feed but that it not be used to provide service to any customer. The Commission's Order No. U-12359A was upheld by the District Court.
LP&L then appealed to this Court. Finding that the Commission did not pass directly upon LP&L's reconventional demand, which contained substantially the same allegations against SLECA, this Court remanded the case to the Commission to rule on LP&L's reconventional demand. Louisiana Power & Light Co. v. Louisiana Public Service Comm., 324 So.2d 430 (La.1976). On remand, by its order of August 24, 1976, the Commission rejected LP&L's reconventional demand seeking the dismantling of SLECA's line; whereupon, the case was again submitted to the District Court and that court again rendered judgment affirming the Commission's Order No. 12359-A. LP&L's appeal is now before this Court.
Two specifications of error are relied upon by LP&L: 1) The Commission's orders contain findings of fact that are arbitrary and unreasonable and made without substantial evidence; and 2) the orders grant SLECA an exclusive territory in an area that it never before served and are arbitrary, capricious and unlawful.
Approximately five miles west of the city of Houma in Terrebonne Parish, Little Bayou Black and Big Bayou Black run parallel to each other flowing roughly in a southeasterly direction. At a point which is pertinent here the two streams are three miles apart. Highway No. 311 runs along the *629 bank of Little Bayou Black and U.S. Highway 90 runs along the banks of Big Bayou Black in this vicinity. About five miles to the north, Bayou Terrebonne runs roughly parallel to Little Bayou Black.
For many years LP&L has maintained an electric transmission and distribution facility terminating at its Terrebonne Substation, the lines being parallel to and about two miles north of Bayou Terrebonne. SLECA has maintained a similar line to the south along the banks of Big Bayou Black.
During the year 1967 the parish of Terrebonne completed construction of the southern 3-mile section of Savanne Road from a point on Little Bayou Black southerly to U.S. Highway 90 along the banks of Big Bayou Black. The road ran in a north-south direction. The segment of Savanne Road to the north, between Little Bayou Black and Bayou Terrebonne, is approximately 2.5 miles long.
In 1970 LP&L planned a loop-feed line along Savanne Road from its facility north of Bayou Terrebonne to its lines south of Big Bayou Black located south and west of the southern terminus of Savanne Road. Under accepted practices in the industry the loop-feed line was to be constructed in sections. At the same time this planning contemplated servicing future customers along Savanne Road with this same line as development occurred.
By a letter of September 8, 1970 the Police Jury of the Parish authorized the installation of ten street lights along Savanne Road in Road Lighting District No. 2. This district included the north half of the 3-mile section of Savanne Road between Little Bayou Black and Big Bayou Black.
In stages thereafter LP&L extended its planned loop-feed and distribution line southward along Savanne Road from its facility north of Bayou Terrebonne. The first segment, completed in 1971, ran to Bayou Terrebonne; the second and third segments ran between Bayou Terrebonne and Little Bayou Black and were completed in 1972 and 1973; the final section was the 3-mile contested section completed on May 25, 1973. This ran from Little Bayou Black on the north to Big Bayou Black on the south.
Insofar as the contested 3-mile section of the LP&L line is concerned, the evidence is to the effect that an effort was made from time to time beginning in 1970 without success to obtain rights of way from Southdown Land Company, the owners of the land abutting Savanne Road in Lighting District No. 2. Southdown's position was that such a line was unnecessary because the land along Savanne Road contained no habitations or commercial structures, it being crop and woodland. Moreover, they were not prepared to subdivide or develop their property in that location, one reason being they owned 10,000 acres between the city of Houma and Savanne Road which should be developed before the property at Savanne Road was opened. When an electric line right of way could not be obtained adjoining the road, LP&L offered to pay Southdown for a right of way within that which Southdown had granted for the construction of Savanne Road. This, too, was unsuccessful, Southdown contending that no electric line installation could be placed within the road right of way, because it was exclusively for road purposes.
Faced with this obstacle, LP&L decided to proceed with the construction under the franchise rights it had acquired from the Police Jury. That ordinance granted unto LP&L
". . . the right, power and authority to construct, maintain and operate in, over and through the Parish of Terrebonne, and in, over, under and along all public roads, streets and alleys therein not within the limits of any incorporated city, town or village, lines or poles, wires, conductors, conduits and cables for the transmission of electric current for heat, light, power and other purposes, in said Parish . . .."
When construction began on May 21, 1973 Southdown protested and promptly filed a suit against LP&L for trespass. At the time of these hearings the suit was still pending.
*630 In constructing the controverted 3-mile section LP&L installed ten street lights within Road Lighting District No. 2. An authorization of the Police Jury permitted one additional street light at the southern terminus of the 3-mile line. The construction was completed on May 25, 1973.
Conrad Lirette owns the land bordering Savanne Road along its southern 1.5 miles, south of Southdown and south of Road Lighting District No. 2. He testified he gave SLECA a right of way for the installation of a line approximately seven years prior to 1973, or during the year 1966, and again on May 18, 1973. No copy of the earlier right of way was introduced in evidence. He had never given LP&L the right to construct electric lines across his property, nor had he requested service from LP&L, although he had requested service from SLECA. The early request was made with the condition that he was not in a hurry because he had another subdivision to develop before developing the property along Savanne Road. During May 1973 he requested service for one night watchman light on his property when he found out that LP&L was constructing its line, SLECA having advised him that they intended to construct a line along Savanne Road, and that they had a permit to do so. No such permit is in evidence.
On May 26, the day after LP&L completed its line, SLECA began the construction of a line from its facilities along Big Bayou Black northerly along Savanne Road for a distance of 1.4 miles terminating at the south line of Road Lighting District No. 2. This line is parallel to and within 10 to 22 feet of LP&L's line. A connection was then made to one night watchman light on Lirette's property, Lirette intending to later make a connection to a pump.
On June 27, 1973 SLECA filed its complaint with the Commission alleging that a LP&L street light was within 300 feet of its facilities along Big Bayou Black and that LP&L's line along the southern three miles of Savanne Road, between Little and Big Bayou Black, were wasteful and a duplication of electric facilities constituting a flagrant attempt to duplicate facilities, all in violation of Section 123 of Title 45 of the Revised Statutes. LP&L answered, denying the charges and reconvening with like charges against SLECA.
Upon learning that the street light at the southern terminus of its 3-mile section of line along Savanne Road was within 300 feet of SLECA's facilities along Big Bayou Black, LP&L promptly removed that light and its poles to a point more than 300 feet from SLECA's facilities.
As the situation now stands, the lines of LP&L and SLECA parallel each other for a distance of 1.5 miles. LP&L's line serves eleven street lights. LP& L's line is also an essential link of an ongoing project to establish a loop-feed line. Such a line would provide service in the event of a breakdown along its principal lines serving a large segment of Terrebonne Parish and adjoining areas. SLECA's line serves one night watchman light. There is obviously a wasteful duplication of facilities and the parallel lines should not be permitted.
On the whole record the most reliable evidence favors LP&L's retention of their 3-mile line between Little Bayou Black and Big Bayou Black; it is a segment of a proposed loop-feed line, while the only present justification for SLECA's line appears to be Lirette's night watchman lighthardly a service which would warrant this duplication. Only a compounding of waste would result from a dismantling of both lines. And an order to dismantle or limit the service of LP&L's line would certainly be arbitrary and capricious if SLECA's line were permitted to remain as the Commissioner's order provides. And, since it is there for a legitimate purpose, there is no point in denying LP&L the right to service with that line when there is no other line there with good reason.
I find, and the record demonstrates, it was obviously error for the Commissioner to find that only one street light was placed for Road Lighting District No. 2, and that within 300 feet of SLECA's line. Eleven such street lights were installed along LP&L's line at the written requests of the *631 proper authoritiesone at the southern extremity of its line at the request of the Police Jury and 10 within Road Lighting District No. 2, at its written request.
While LP&L's placement of this 3-mile line along Savanne Road would not be justified to serve street lights in this uninhabited crop and woodland area, it is fully justified by the step-by-step practice of establishing loop-feed lines, a practice in keeping with economic and budgetary considerations. The line was not, therefore, "for the principal purpose of preempting territory."
On the other hand there is no justification whatever in this record for permitting the SLECA line to remain, a line begun and completed after the completion of LP&L's line, a line occupying a territory SLECA had never served before, a line servicing one light bulb, and a line constructed, in my view, solely to obstruct and deny LP&L's legitimate and justified extension.
SLECA's contention that the loop-feed line was an afterthought on LP&L's part is unfounded. To the contrary in its initial pleading, by the testimony of its principal witness at the Commission hearing and in an affidavit requested by the Commissioner, LP&L claimed the line's dual purpose as a loop-feed and distribution line in the very beginning. Failure of the Commission to recognize this purpose was the reason for the additional evidence on the subject in the District Court. Persuaded by this additional evidence the Commission did recognize the validity of the line's function as a link in an ongoing project to connect LP&L's principal lines.
These facts require that this Court find the determination of the Commission to be contrary to the evidence, and that no legitimate regulatory function is served by its action. Section 123 does not confer upon the Commission the power to grant to SLECA what amounts to an exclusive franchise over the area in question under these circumstances.
I would reverse the Commission order as arbitrary and capricious. The order finds no support in the record.
NOTES
[1] One commissioner of the (then) three-member Commission dissented, saying "both constructions violate the principle of plant economy and should be dismantled to avoid the allocation of territory based on an improper act and expenditure." The Commission eventually did not require Louisiana Power to dismantle its line; instead it limited its use to that of a loop feed or tie line between its substations in the region.
[2] Southdown immediately filed a suit against Louisiana Power for trespass, since it had granted the police jury a servitude limited to road purposes.
[3] In the original commission hearing, Louisiana Power did not assert this last ground as a non-pre-emptive justification. When it produced evidence to this effect at the first judicial review of the commission order, on remand the commission deleted its initial order that the line be dismantled; instead, it permitted the line's continuation as a loop or feed line.
[1] La.R.S. 45:123:

"No electric public utility shall construct or extend its facilities, or furnish, or offer to furnish electric service to any point of connection which at the time of the proposed construction, extension, or service is being served by, or which is not being served but is located within 300 feet of an electric line of another electric public utility, except with the consent in writing of such other electric public utility; provided, however, that nothing contained herein shall preclude (a) any electric public utility from extending service to an applicant for service at an unserved point of connection located within 300 feet of an existing electric line of such electric public utility, unless (i) such line was not in operation on April 1, 1970 and (ii) the point of connection is located within 300 feet of an existing electric line, of another electric public utility, which line was in operation on said date, or (b) any electric public utility from extending service to its own property, or to another electric public utility for resale; and provided further that any consumer who feels aggrieved with the electric service being received by him may apply to the Louisiana Public Service Commission for an order directed to his present supplier to show cause why the consumer should not be released from said supplier, and if the commission shall find that the service rendered to such consumer is inadequate and will not be rendered adequate within a reasonable time the release shall be granted.
"As used in this section, an `electric line' is a line constructed and operated for the transmission and/or distribution of electricity and which was not originally constructed for the principal purpose of preempting territory.
"The provisions of this section shall not apply to municipally-owned or operated utilities of the State of Louisiana or to the parish of Orleans. Nothing in R.S. 45:121, 45:123, 45:1161, 45:1175 or R.S. 12:426 shall alter the rights or authority of municipalities with respect to franchises."