TATE, CALOGERO, and DENNIS, JJ.,
dissenting.
We respectfully dissent.
In our view, the majority has erroneously substituted a judicial re-evaluation of the evidence for the findings made by the Louisiana Public Service Commission within the authority granted to it (not to the courts) by our state constitution to regulate the issuance of common carrier certificates.
The Commission order found that the opponent Southern’s service under its existing certificate had not been adequate to meet the needs of the public. On the basis of this finding, it therefore issued a certificate to the applicant Radio so as to authorize what in effect will be a competing service.
*881 The essential issue before us for review is whether this determination by the Commission is so unsupported by the evidence as to constitute an arbitrary and clearly erroneous finding, which thus resulted in an abuse of the Commission’s authority by the issuance of a competing certificate to Radio, the applicant.
The Commission found that the service provided by Southern under its existing certificate, by which it enjoys a virtual monopoly over radio common carrier service in Northeast Louisiana, was insufficiently responsive to the public need. As will be shown below, the evidence before the Commission can be construed to support this finding. Nevertheless, a majority of this court substitutes its view that there is insufficient evidence for us to find inadequate service furnished by the existing monopoly — despite the Commission’s considered view that competition was necessary to provide the public adequate service in radio common carrier services, in view of the delays in furnishing service, shortages of equipment, and inability or refusal by the existing certificate-holder to offer innovative services.
A more detailed examination of the issues and of the evidence will illustrate why, in the opinion of the dissenting justices, the majority of this court has invaded the constitutional authority of the Commission. The majority has done so, by judicially denying a certificate issued to the applicant Radio by the Commission in order, by competitive services, to provide the adequate service needed by the public but not provided by Southern under its existing monopoly.
I.
The applicant Radio filed an application to the Commission to obtain a certificate of public convenience and necessity as a radio common carrier under the provisions of La. R.S. 45:1500-1504. This statute provides that the Commission shall not grant a certificate to authorize a competing or duplicating operation unless it first determines, after hearing on reasonable notice, (a) that the existing service is inadequate to meet the reasonable needs of the public and (b) that the existing operator is unable to provide reasonable adequate service or refuses or neglects to do so. La.R.S. 45:1503 C[1] as interpreted by us in Communications Industries, Inc. v. Louisiana Public Service Comm’n, 260 La. 1, 254 So.2d 613 (1971).
Radio applied for a certificate as a radio common carrier under the cited statute. It sought authority to provide services within the municipalities of Shreveport and Natch-itoches and environs.
A hearing was held after notice to Southern, the opponent. Southern cross-examined the applicant’s witnesses and introduced testimony in opposition to the application.[2]
In its order granting Radio a certificate as radio common carrier under La.R.S. 45:1500-1504, the Commission recited that witnesses had testified that the service of the opponent Southern “had not been com *882 pletely adequate and that complaints had been registered with the Company.” It further cited the instance of a witness who had been forced to install his own system because of the inadequacy of existing services. The Commission thereupon found that the public convenience and necessity required the issuance of an additional certificate for the Shreveport-Natchitoches area.
Southern attacks the Commission’s order on two principal substantive bases. It contends: (A) That the commission failed to require the applicant to meet the burden statutorily required by La.R.S. 45:1503 C before issuing a certificate authorizing a competing service (see II below of opinion); and (B) That the Commission’s finding is unsupported by the evidence and is therefore arbitrary and capricious (see III below).
II.
Aside from questioning the factual bases of the Commission’s determination, Southern emphasizes that, even if the Commission properly found that existing services by Southern were inadequate, its order did not (at least expressly) find also, as required by La.R.S. 45:1503 C (set footnote 1 above) that the existing operators were unable to or had refused to provide reasonably adequate service. See Communications Industries, Inc. v. Louisiana Public Service Comm’n, 260 La. 1, 254 So.2d 613 (1971).
Although inartistically drafted, the Commission’s order in our opinion indicates its acceptance of testimony before it that, despite customer complaints of inadequacy, Southern had been unable to, and was presently unable to, meet the demands of public convenience and necessity. Following such finding, the Commission’s order recites the Commission’s opinion that “the public convenience necessity requires the issuance of an additional radio common carrier certificate for the Shreveport-Natchitoches area” —which we take to mean a Commission finding that, in order to meet the public need, it was required to issue the additional certificate to provide additional or alternative service needed by the Shreveport-Natchitoches area.
We therefore do not find merit to Southern’s complaint that the Commission did not apply the correct statutory standard in granting the additional radio common carrier certificate to Radio. We are re-enforced in this view, in that Southern expressly sought rehearing before the Commission on this basis, and the Commission denied such rehearing, after reconsideration, again reciting that Radio was issued its certificate under the provisions of La.R.S. 45:1500— 1504.
III.
Southern further contends that totally unsupported by the evidence are the Commission’s requisite findings (a) that the service to the Shreveport-Natchitoches area presently furnished by Southern under its existing certificate is inadequate and (b) that Southern is unable to or had refused or neglected to provide reasonably adequate service.
The trial court concluded that the testimony of the applicant’s witnesses (naming Goslin, Taylor, Collier and Scoggins) showed neither inadequacy of Southern’s services nor that it had failed, refused, or neglected to provide adequate service. In so doing, in our opinion the trial court erred by not applying the standard of judicial review to such Commission determinations enunciated by us in Communications Industries, Inc. v. Louisiana Public Service Comm’n, 260 La. 1, 254 So.2d 613, 616 (1971):
“Radio-telephone communications is a technical service entrusted to the jurisdiction of the Louisiana Public Service Commission. Under well-accepted standards of judicial review, the Commission’s ruling will be set aside only if the ruling is arbitrary, capricious or abusive of power.”
Construed (as required[3]) most favorably to the Commission’s determination, the evi *883 dence upon which the Commission relied shows:
The witness Goslin, a realtor, testified: About thirty days before the hearing, he had called Southern to request two-way walkie-talkie radio service. The manager informed him that such service was not available at this particular time, and that he did not know when the units would be available.[4] When he requested installation of a mobile phone (i. e., installed instead in his automobile), the manager stated there was a waiting list and that he would call the witness back. In 1975 the witness had been a Southern subscriber, but due to the inadequacy of service afforded him had withdrawn as a customer. Because of his need for radio communications, and despite his prior dissatisfaction, he had sought in 1976 to obtain reinstallation of the system; Southern at first refused to accept his application, then demanded an exorbitant deposit, and then failed to return his calls to the owner to make more reasonable deposit arrangements.
The witness Boddie, executive of a security and investigation company with 300 employees, testified that he had been a Southern subscriber since 1975. Because of the inadequacy of Southern’s services in relaying messages and in providing two-way communication (despite numerous complaints by him for better service), his company had been forced to invest $50,000 in its own radio system. His company still used Southern’s radio-pager system, which was adequate for downtown Shreveport, although inadequate for his purposes outside of that area, especially in the western part of Caddo Parish.
The witness Scoggins, a consulting petroleum engineer, testified that he has been a subscriber of Southern since 1974. He testified that he had been forced to buy his own multi-channel set for radio communications via Southern because Southern had none available at the time. He also testified to some congestion and delay in the use of the channels available through Southern for the radio-telephone service to which he subscribed.
The witnesses Collier (a contractor) and Taylor (office manager of her husband’s oilfield diamond-coring business) testified to their unsuccessful attempts in 1975 to obtain Southern’s radio carrier services in 1975 and to being told they must be put on waiting lists for at least one or two months. They had never re-applied.
The applicant’s officers testified to their intention to offer two-way communication by portable units (which can be moved from the subscriber’s car rather than installed therein), as well as by two-way service within the cars, a service not readily available from Southern, the existing carrier (see footnote 1). Three of the applicant’s witnesses testified to the need for such service, and at least two of them testified they had sought to obtain it from Southern without success or without adequate relay-of-message service furnished by Southern.
Some of the evidence before the Commission thus showed (a) the inadequacy of service presently offered by Southern in the Shreveport-Natchitoehes area under its existing certificate and (b) the inability or refusal, despite customer request, of Southern to afford adequate service, particularly of two-way communication between customer and caller.
The sufficiency of the evidence before the Commission is not re-weighed by the courts upon judicial review, and the courts will not overturn a Commission determination when there is some evidence upon which the Commission could reasonably base its finding. B & M Trucking, Inc. v. Louisiana Public Service Comm’n, 353 So.2d 1323, 1327 (La. 1977).
*884 As we stated in Louisiana Power & Light Co. v. Louisiana Public Service Comm’n, 358 So.2d 623, 626 (La.1978) (citations omitted):
“ * * * [W]hile a ruling of the commission may be deemed arbitrary unless supported by some factual evidence, the function of the court on judicial review is not to re-weigh and re-evaluate the evidence and to substitute its judgment for that of the administrative agency constitutionally entrusted with regulation of the matter. * * * ‘Whenever the Public Service Commission, in the issuing of an order, has acted within its power, and not arbitrarily or grossly contrary to the evidence, and when no error of law has been committed, the court must not substitute its judgment for that of the commission, or consider the expediency or wisdom of the order, or say whether on like evidence the court would have made a similar ruling.’ ”

Conclusion

Accordingly, we respectfully dissent from the majority opinion’s affirmance of the judgment of the district court, which annulled the Commission order granting the certificate to Radio & Communication Consultants, Inc.

. La.R.S. 45:1503 C provides in full:
“The commission shall not grant a certificate for a proposed radio common carrier operation or extension thereof which will be in competition with or duplication of any other radio common carrier unless it shall first determine that the existing service is inadequate to meet the reasonable needs of the public and that the person operating the same is unable to or refuses or neglects after hearing on reasonable notice to provide reasonable adequate service.”

. Southern complains that the pleadings by which Radio applied for its certificate did not meet the technical requirements of the Commission’s rules and thus did not give adequate notice of the factual basis of its contention that Southern’s prior service was inadequate.
Despite such technical deficiencies in pleading, the proceeding did develop into a full hearing, after adequate notice, at which both parties had full opportunity to confront the witnesses against them and to produce witnesses on their own behalf. Although at the commencement of the Commission hearing Southern made a formal objection to the pleading deficiency, it did not request a continuance. In fact, it presented a well prepared case in opposition to the application.
Under the circumstances, in the absence of any shown or claimed prejudice, we are unable to find that the Commission’s relaxed application to its pleading rules is an abuse of its discretion in the administration of its hearings.

. See, e. g., Louisiana Power & Light Co. v. Louisiana Public Service Comm’n, 358 So.2d 623 (La. 1978) and B & M Trucking, Inc. v. Comm’n, 353 So.2d 1323 (La. 1977).

. Although the president as well as the manager of Southern testified that Southern offered two-way service, at least upon request and approved application, Southern’s newspaper advertisements and brochures did not list this as a service available to the public. Nor did Southern’s manager deny, in his subsequent testimony, the conversation with Goslin.